1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9    JOHN SUTTON, GAIL SUTTON and        No C 06-6417 VRW
     DANIELLE SUTTON,
10
                  Plaintiffs,            ORDER
11
          v
12
     ROBERTA SOKOTOWSKI, LESLIE FOOTE,
13   WALTER HOLZ, JR, VICTORIAN CARE
     HOMES OF THE MONTEREY PENINSULA,
14   INC, RICHARD BISHOP, ANN SYDES
     d/b/a A & A AUCTION,
15
                  Defendants.
16   _____/

17

18        The court has diversity jurisdiction over this matter

19   pursuant to 28 USC § 1332.  It is brought by Gail Sutton, the adult

20   daughter of Letitia Breng Rose, Gail's husband John Sutton and

21   Gail's daughter, Danielle Sutton.  Doc #1 ¶ 1.  Defendants move to

22   dismiss.

23        Dr Leslie Foote has filed a motion to dismiss for lack of

24   subject matter jurisdiction under FRCP 12(b)(1), insufficient

25   service of process under FRCP 12(b)(5) and failure to state a claim

26   under FRCP 12(b)(6).  Doc #17-1.  Dr Walter Holz, Jr has filed a

27   motion to dismiss for failure to state a claim under FRCP 12(b)(6).

28   Doc #24.  Defendants Roberta Sokotowski and Richard Bishop have

United States District Court
For the Northern District of California

filed joint motions to dismiss for lack of subject matter jurisdiction under FRCP 12(b)(1) and failure to state a claim under FRCP 12(b)(6).  Doc #13.  Defendant Ann Sydes d/b/a A & A Auction, in addition to moving to dismiss for lack of subject matter jurisdiction under FRCP 12(b)(1), insufficient service of process under FRCP 12(b)(5) and failure to state a claim under FRCP 12(b)(6), has requested sanctions against plaintiffs.  Doc ##8, 20.  The court has received and reviewed memoranda from the parties and finds it appropriate for decision without oral argument.

For the reasons stated herein, Holz's motion to dismiss is GRANTED.  Foote's motion to dismiss is GRANTED.  Sokotowski and Bishop's joint motion to dismiss is GRANTED.  Sydes's motion to dismiss is GRANTED and her motion for sanctions is DENIED.

I

The instant action, filed October 13, 2006, is one of four cases filed in this court that have arisen, in one respect or another, from conservatorship proceedings opened in 2003 in Monterey County concerning the now-deceased Letitia Breng Rose.  See CAND C-04-4176 (Rose v Hogan); CAND No C-05-4469 (Sutton v Teets); CAND No C-06-0472 (Sutton v Llewellyn).

Defendants' roles in this case are alleged to be as follows:  Victorian is a residential care facility in Monterey County where Rose lived until her death; Sokotowski and Bishop are public guardians who acted as conservators over Rose's estate and person; Foote and Holz are doctors who cared for Rose while she was at Victorian; Sydes is a public auctioneer who auctioned off assets from Rose's estate.  Doc #1 ¶¶ 3-6.

2

Plaintiffs' first two causes of action allege that defendants Victorian, Sokotowski, Bishop, Foote and Holz caused Rose's wrongful death (claim #1) and that they committed elder abuse while caring for Rose (claim #2).  Doc #1 ¶¶ 22-35; see Cal Civ Proc Code § 377.60; Cal Welf & Inst Code § 15657.  Both claims arise out of essentially the same factual allegations.  In particular, plaintiffs allege that those defendants drugged Rose because she objected to the conservatorship, prescribed medications that weakened her physical condition, gave her morphine and ativan to shorten her life, failed to refer her to proper specialists when she fell in January 2005 and provided inadequate care to her in general.  Id ¶¶ 25-35.

Plaintiffs' third and fourth causes of action allege that Sokotowski and Bishop (claim #3) and Sydes (claim #4) "wrongfully dissipated Rose's estate."  Doc #1 ¶¶ 40-44.  In particular, plaintiffs allege that Sokotowski and Bishop "wrongfully increased Rose's insurance costs," sold her stocks and bonds at a loss, paid exorbitant attorney's fees and failed to notify plaintiffs of the sale of Rose's assets.  Id.  Plaintiffs' cause of action against Sydes alleges she sold estate assets that actually belonged to plaintiffs and that Sydes improperly published notice of the sale of Rose's estate, denying them the opportunity to purchase her assets.  Doc #1 ¶¶ 45-50.

## II

A motion to dismiss under FRCP 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable theory."

United States District Court
For the Northern District of California

William W Schwarzer, A Wallace Tashima and James M Wagstaffe, Federal Civil Procedure Before Trial, 9:187 (Rutter Group 2006); Balistreri v Pacifica Police Dept, 901 F2d 696, 699 (9th Cir 1990). The complaint must be construed in the light most favorable to the plaintiff and should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. Id at 9:213. Although courts may be particularly lenient with pro se plaintiffs, liberal interpretation of the complaint does not extend to supplying plaintiffs with essential elements not initially pled. Pena v Gardner, 976 F2d 469, 471 (9th Cir 1992).

III

The court turns first to the motion to dismiss filed by Foote. Doc #17-1. Although Foote makes a number of arguments, because the court GRANTS her motion to dismiss based on insufficient service of process, it does not reach the substantive issues raised by her motion.

Foote argues that the complaint has not been properly served because the process server left the complaint and summons with a person at Foote's place of business, not at her "dwelling house or usual place of abode" as required by FRCP 4(e)(2). Doc #17-1 at 8:23-9:7. Although the Ninth Circuit requires "substantial compliance" with Rule 4, it is well-established that service of process at a defendant's business is not sufficient under that rule. Daly-Murphy v Winston, 837 F2d 348, 355-56 (9th Cir 1987); see also Wright & Miller, 4A Federal Practice and Procedure: Civil 3d § 1096 at 522 (West 2002). In Gerritsen v

United States District Court<br>For the Northern District of California

4

Consulado General de Mexico, 989 F2d 340, 344-45 (9th Cir 1993), the Ninth Circuit held that where a plaintiff left a summons and complaint with a co-worker at the defendant's place of employment, the trial court properly dismissed the defendant for insufficient service of process.  In Daly-Murphy, the Ninth Circuit dismissed the defendants in their individual capacities, even though leaving the summons and complaint at their place of employment properly served them in their official capacities.  837 F2d at 355-56.

Plaintiffs' only position to the contrary is that Foote "waived [service of process] in light of her response to the substantive arguments."  Doc #37 at 10:4-6.  Yet FRCP 12(h)(1) makes it clear that the defense of insufficiency of process would be waived in the event that it is omitted from a motion raising other Rule 12 defenses.  Not only is Foote permitted to argue insufficient process in the present motion, she is, for all intents and purposes, required to or she risks forfeiting it as a defense.

In sum, the complaint and summons were left by a process server with an employee at Foote's place of business.  The proof of service does not reveal any additional measures taken to ensure that service was effected.  Plaintiffs are afforded only 120 days after a complaint is filed to perfect service of process.  FRCP 4(m).  Because plaintiffs filed this lawsuit on October 13, 2006, that 120 day period has long elapsed.  Given that Foote gave ample notice to plaintiffs of their defect in service, the court finds no good cause for extending the amount of time available for properly serving her.  Accordingly, Foote is DISMISSED without prejudice.

//

//

**United States District Court**
For the Northern District of California

IV

The court next turns to Holz's motion to dismiss.  Doc #24.  The court addresses the procedural matters raised by Holz's motion and then proceeds to the substantive merits of his motion.

A

First, Holz objects to the timeliness of plaintiffs' opposition.  Doc #50 at 1:24-2:5.  On that issue, Local Rule 7-3(a) is unambiguous:  "Any opposition to a motion must be served and filed not less than 21 days before the hearing date."  Plaintiffs violated this rule by filing their opposition papers on March 7, 2007, only fifteen days before the scheduled hearing.  See Doc #38 at 1.  Although Holz has requested that the court not consider these late-filed oppositions, that sanction would be unduly harsh, especially in light of plaintiffs' pro se status.  Furthermore, Holz is not prejudiced by plaintiffs' late opposition because Holz's motion succeeds on its merits.  Accordingly, Holz's objection is OVERRULED; plaintiffs are admonished, however, that their pro se status does not excuse them from adherence to both the Federal Rules of Civil Procedure and the Local Rules for the Northern District of California and that such lapses will not be excused if they cause prejudice to any other party.

Second, the court agrees with Holz that the declaration filed by plaintiffs in opposition to Holz's motion (Doc #45) must not be considered by the court in its ruling on this motion.  Under FRCP 12(b), the court may not consider matters outside the pleadings on a motion to dismiss without converting it to one for summary judgment and declines to do so here.  Moreover, the

6

United States District Court

For the Northern District of California

declaration, a statement containing opinion regarding the adequacy of Rose's medical care, made by a Los Angeles area emergency physician with no apparent connection to Rose, is entirely irrelevant to the standing issues upon which Holz has moved for dismissal.  Holz's objection is SUSTAINED.

B

The court now turns to the merits of Holz's motion to dismiss.  Holz first requests that John and Danielle Sutton be dismissed as plaintiffs from the wrongful death claim (claim #1), arguing that under California Code of Civil Procedure § 377.60(a), if there is a surviving child of the decedent, that child's successors-in-interest may not maintain such a claim.  Doc #24, 3:20-4:13.  Plaintiffs do not present any clear opposition to Holz's contention other than the misplaced argument that as successors-in-interest, they have a right to maintain such an action under California Code of Civil Procedure § 377.30 —— a statute that governs standing for survivor actions, not wrongful death claims.  Doc #38, 3:10-12.

As an initial matter, plaintiffs contend that Holz's argument based on § 377.60 lacks merit under Erie Railroad Co v Tompkins, 304 US 64 (1938), because "Federal Rules of Civil Procedure trump state rules."  Doc # 38 at 7:8-9.  The so-called "Erie doctrine" provides that while federal courts exercising diversity jurisdiction must apply the substantive law of the state in which they are located, procedural issues are governed by federal law.  William W Schwarzer, A Wallace Tashima and James M Wagstaffe, Federal Civil Procedure Before Trial, 1:36 (Rutter Group

7

United States District Court
For the Northern District of California

2006); <u>Gasperini v Center for Humanities, Inc</u>, 518 US 415, 427 (1996).  Because § 377.60 governs a plaintiff's right to bring an action, it is considered substantive for <u>Erie</u> purposes and must be applied by the court here.  FRCP 17(b); Schwarzer, Tashima & Wagstaffe, <u>Federal Civil Procedure Before Trial</u>, 1:53.1 (Rutter Group 2006); <u>Firestone v Galbreath</u>, 976 F2d 279, 283 (6th Cir 1992).

Additionally, plaintiffs confuse § 377.30 and § 377.60. The former governs standing for survivor actions, i e the ability of plaintiffs to bring or maintain a cause of action that belonged to Rose prior to her death.  The latter governs standing to bring a wrongful death action, a cause of action that belongs to certain individuals who survive the decedent; a wrongful death claim never belonged, nor could have belonged, to Rose.  Accordingly, § 377.30 does not apply here.

By contrast, § 377.60 is controlling and is strictly construed under California law.  <u>Phraner v Cote Mark, Inc</u>, 55 Cal App 4th 166, 169 (Cal App 4th Dist 1997) (internal citations omitted).  The relevant language of § 377.60(a) reads that a wrongful death cause of action may be maintained by:

> The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.

Here, Gail Sutton is the child of the decedent and is still alive. As such, the statutory language makes it clear that she is the only party to this action who may sue for the wrongful death of Rose; the alleged potential for John and Danielle Sutton to inherit

**United States District Court**
For the Northern District of California

Rose's estate does not change this fact.  <u>Chavez v Carpenter</u>, 91 Cal App 4th 1433, 1439, 1444 (Cal App 6th Dist 2001) (parents of decedent unable to maintain wrongful death action as heirs where decedent's daughter survived him).  Accordingly, they lack standing to pursue a cause of action for the wrongful death of Rose.  Their first cause of action is therefore DISMISSED without leave to amend.  Only Gail Sutton may proceed on the wrongful death claim.

C

Additionally, Holz argues that John and Danielle Sutton lack standing to bring a cause of action for elder abuse under California Welfare & Institutions Code § 15657.3.  Doc #24, 4:14-5:11.  Plaintiffs argue that they have standing because they are successors-in-interest to Rose's estate.  Doc #38 at 3:9-6:13.

The initial requirement for standing to bring an elder abuse claim is governed by § 15657.3(d) which provides:

> Upon petition, after the death of the elder or dependent adult, the right to maintain an action shall be transferred to the personal representative of the decedent, or if none, to the person or persons entitled to succeed to the decedent's estate.

Holz contends that the phrase "persons entitled to succeed to the decedent's estate" should be construed narrowly to mean that as long as there is a living issue of the decedent, only that issue may maintain a survivor cause of action for elder abuse.  Doc #50 at 3:25-4:20.

Yet the California court of appeal rejected that argument in <u>Estate of Lowrie v Lowrie</u>, 118 Cal App 4th 220, 228, 231 (2d Dist 2004), when it allowed the decedent's granddaughter to

**United States District Court**
For the Northern District of California

maintain an elder abuse cause of action against the decedent's son, even though the decedent still had other living children. Because the granddaughter's success on the elder abuse claim would have entitled her to succeed the defendant as trustee under the decedent's estate plan, she had a sufficient interest in the estate to maintain the cause of action. Id at 229-30. Although Holz argues that <u>Lowrie</u> is limited to situations where the elder abuse defendant is the issue of the decedent, that argument fails in light of the fact that the decedent in <u>Lowrie</u> had other living children who were not accused of elder abuse. Id at 228.

Here, by order of the Monterey County superior court, the assets of Rose's estate are to be divided equally between Gail and Danielle Sutton; Danielle Sutton's half is to be held in trust until she reaches the age of 22. Doc #38, Ex B (April 28, 2006 Order of Superior Court of California, County of Monterey, Case No MP 16886) at 3:3-6. John Sutton received no portion of the estate under that order. Id. Only Gail and Danielle Sutton may pursue a cause of action alleging the elder abuse of Rose under § 15657.3.

Additionally, standing to bring a survivor action is governed by California Code of Civil Procedure § 377.32. That statute requires a plaintiff to file a declaration with the court, under penalty of perjury, demonstrating a survivor's interest in pursuing a claim. Although this requirement is procedural in nature, it has been interpreted to establish the minimum requirements for asserting standing to pursue a survivor cause of action, even when a federal court is sitting in diversity. <u>Dillard v Curtis</u>, 2004 US Dist LEXIS 22926, *20 (ND Cal 2004) (Hamilton, J) (finding that plaintiffs' failure to file declaration under §

United States District Court

For the Northern District of California

377.32 rendered standing an "open question").  Although plaintiffs have not employed the exact technical language required by § 377.32, given that the superior court has adjudicated that Gail and Danielle Sutton are the only heirs to the Rose estate, coupled with the fact that they have filed declarations that substantially comply with § 377.32, the court perceives no benefit to dismissing their claim on such technical grounds.  See Doc #38-1 (Plaintiffs' Decl in Opp to Holz's Mot to Dismiss).

Accordingly, Gail and Danielle Sutton have effectively established standing to pursue their elder abuse cause of action and the motions to dismiss as to those plaintiffs are DENIED.

John Sutton, by contrast, has failed to allege any facts demonstrating that he is a successor-in-interest to Rose's estate. Given that the superior court has ordered that the entire estate be divided equally between Gail and Danielle Sutton, the court perceives no way for John Sutton effectively to plead standing under the requirements of § 15657.3 and § 377.32.  Accordingly, the motion to dismiss John Sutton from plaintiffs' second cause of action is GRANTED without leave to amend.

V

Sokotowski and Bishop have moved to dismiss all of plaintiffs' claims, arguing that because their actions were approved by order of the Monterey County superior court, plaintiffs are barred by res judicata from pursuing their claims in this court.  Doc #13 at 5:22-7:22.  In support of their motion, Sokotowski and Bishop have filed a declaration attaching records from the superior court conservatorship proceedings over Rose's

11

United States District Court
For the Northern District of California

estate.  Doc #14 (Rentz Decl).  The court may take judicial notice
of official records without converting a Rule 12(b)(6) motion into
a Rule 56 motion for summary judgment.  Schwarzer, Tashima &
Wagstaffe, <u>Federal Civil Procedure Before Trial</u>, 9:212.15; <u>In re
Colonial Mortg Bankers Corp</u>, 324 F3d 12, 16, 19 (1st Cir 2003).
Accordingly, Sokotowski and Bishop's request for judicial notice
(Doc #15) is GRANTED.  As presently explained, it is plain that the
Monterey County proceedings preclude plaintiffs' "wrongful
dissipation of the estate" claim.  The court does not reach
Sokotowski and Bishop's alternative theories for dismissal.

A

        Sokotowski and Bishop's primary argument for res judicata
is that the issue of "wrongful dissipation of Rose's estate" (claim
#3) is precluded by the Monterey superior court's final judgment on
the disposition of Rose's estate through her conservatorship
proceedings.  Doc #13 at 5:24-7:22.  California conservatorship
statutes provide a direct means for interested parties, including
those with only an expectancy or prospective interest in the
estate, to investigate wrongdoing by a person holding a
conservatee's property.  Cal Probate Code § 2616 et seq; <u>Johnson v
Kotyck</u>, 76 Cal App 4th 83, 90 (Cal App 2d Dist 1999).  Sokotowski
and Bishop correctly argue that because plaintiffs availed
themselves of these remedies in the conservatorship proceedings in
the superior court, they are precluded from raising their claim in
federal court.

        The degree to which a state court judgment will be given
preclusive effect in federal court depends upon the preclusive

12

United States District Court
For the Northern District of California

effect such judgment would have in state court.  Manufactured Home Communities, Inc v City of San Jose, 420 F3d 1022, 1031 (9th Cir 2005).  California has a statute specifically governing the preclusive effect of the final judgment of a conservatorship proceeding.  California Probate Code § 2103(a) provides as follows:

> When a judgment or order made pursuant to this division becomes final, it releases the guardian or conservator and the sureties from all claims of the ward or conservatee and of any persons affected thereby based upon any act or omission directly authorized, approved, or confirmed in the judgment or order.  For purposes of this section, 'order' includes an order settling an account of the guardian or conservator, whether an intermediate or final account.

Yet the preclusive effect of such judgments is not absolute and there is an exception to the rule where the conservator has obtained the judgment by fraud, conspiracy or misrepresentation.  In re Conservatorship of Harvey, 3 Cal 3d 646, 651-52 (1970); Cal Probate Code § 2103(b).  The fraud exception to the preclusive effect of a final order under § 2103 is limited, however, to claims of "extrinsic fraud."  Bank of America v Superior Court, 181 Cal App 3d 705, 714-15 (Cal App 3d Dist 1986).  Extrinsic fraud occurs "[w]here the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent" or where "fiduciaries have concealed information they have a duty to disclose."  Lazzarone v Bank of America, 181 Cal App 3d 581, 596 (Cal App 3d Dist 1986) (citing United States v Throckmorton, 98 US 61, 65-66 (1878)).  Thus, in Lazzarone, plaintiffs' claims that a conservator mismanaged funds were insufficient to circumvent the res judicata effect of § 2103.  Id at 597-98.

**United States District Court**

For the Northern District of California

Here, plaintiffs simply have not demonstrated why they should be permitted to pursue their claims arising out of the management of Rose's estate.  After Rose was appointed a conservator, plaintiffs filed a "Motion to Dismiss/Strike the Petition for Conservatorship" with the superior court.  Doc #14 at 4:3-5, Ex F.  In that document, plaintiffs alleged, <u>inter alia</u>, that the county entered Rose's home and took her money and personal property.  Id at 5:11-13, Ex F ¶ 10.  On January 23, 2004, the court heard the conservatorship petition and granted it, revoking Gail Sutton's power of attorney.  Id at 7:9-16, Ex I at 1-4.  On January 24 and January 31, 2004, plaintiffs filed a "Motion to Terminate the Order for Conservatorship" with the superior court, once again alleging that an agent had taken all of Rose's property and that the county was executing the conservatorship in bad faith.  Id at 7:17-19, 9:4-13, Ex J ¶¶ 10-13.  On February 27, 2004, the superior court, after a hearing on the issue, ruled in favor of retaining the conservatorship.  Id, Ex R.

Over the next year, plaintiffs continued to file various motions with the superior court relating to Rose's conservatorship. Id 11:11-6.  On March 6, 2005, plaintiffs filed a petition to halt the sale of Rose's personal property.  Id at 17:7-12, Ex JJ.  This document alleged that all of Rose's property, with the exception of some furniture, belonged to plaintiffs.  Id, Ex JJ ¶¶ 1-6.

On March 25, 2005, the public guardian filed its first "account current" of Rose's estate, which covered the period from December 12, 2003 through December 12, 2004, and on April 4, 2005 it filed a petition to sell Rose's property.  Id at 17:18-23, Ex LL at 18:1-5, Ex MM.  Plaintiffs opposed the accounting and the sale

14

United States District Court
For the Northern District of California

of Rose's property in two separate documents filed with the court on April 17, 2005.  Id at 18:6-15, Ex NN, Ex OO.  Plaintiffs did not appear at the hearing and the court granted the conservators permission to sell the property, specifically stating that it had considered plaintiffs' filed petitions.  Id at 18:16-20, Ex PP.

Plaintiffs next made a motion to "open and strike" the order to sell possessions, arguing that they did not know that the hearing date for their previous petitions had been changed.  Id, Ex RR.  The court once again held a hearing on July 8, 2005, and plaintiffs appeared by telephone.  Id, Ex UU at 1.  The judge found that Rose was afforded every protection under California law, declined to open and strike the order to sell possessions and approved the accounting.  Id, Ex UU at 23-30, Ex WW.  Plaintiffs have filed three state court appeals and one writ in the California court of appeal, but have never paid the appropriate filing fee to perfect those proceedings.  Id at 24:10-14; Doc #21 (Connolly Decl), Ex I.

In short, plaintiffs have participated in or have aired their grievances about the handling of Rose's estate at various stages of the state conservatorship proceedings.  Plaintiffs' allegations in the present case all allege that Sokotowski and Bishop mishandled property of the estate during the conservatorship.  Specifically, the complaint alleges that they: inflated insurance costs, failed to rent Rose's empty house to generate income, sold stocks and bonds at a loss, failed to collect a security deposit from Victorian, charged the estate excessive attorneys fees and sold property without giving proper notice.  Doc #1 ¶¶ 40-45.  None of these allegations come even close to

United States District Court
For the Northern District of California

alleging the extrinsic fraud required to circumvent the preclusive effect of § 2103.  Plaintiffs in no way allege that they were prevented from participating in the state conservatorship proceedings or that Sokotowski and Bishop concealed transactions from the superior court.

The final accounting of the estate has been approved by the superior court in Monterey County and plaintiffs have evidently chosen not to pursue their appeals from the adverse state court rulings.  The court will not disturb the final disposition of that state case by allowing plaintiffs to revive those claims in federal court.  Given that plaintiffs have filed multiple petitions in state court and that this is the fourth federal lawsuit arising out of the handling of Rose's estate, the court sees no avenue for plaintiffs to amend their complaint so as to circumvent the res judicata effect of the final state order.  Accordingly, plaintiffs' claim against Sokotowski and Bishop for "wrongful dissipation of the estate" (claim #3) is DISMISSED without leave to amend.

B

From the face of plaintiffs' complaint, the court finds no legally cognizable theory upon which Sokotowski and Bishop could be held liable for the wrongful death or elder abuse of Rose; these causes of action rest entirely on allegations that Rose received improper medical care from Victorian and from her physicians.  The only allegation made specifically against Sokotowski and Bishop is that they "deprived Rose from visiting privately with [plaintiffs]."  Doc #1 ¶ 34.  In no way could this lone allegation be construed to support a cause of action for wrongful death or

**United States District Court**
For the Northern District of California

elder abuse.  Accordingly, plaintiffs' first two claims against
Sokotowski and Bishop are GRANTED without leave to amend.

VI

Plaintiffs' claim against Sydes, although styled as a
single cause of action, actually offers two theories against her:
(1) it alleges Sydes auctioned off the property of Rose's estate,
including property in which plaintiffs claim an ownership interest
and (2) it alleges Sydes failed to give proper notice of the sale
under California Civil Code § 1812.601.  Doc #1 ¶¶ 45-50.  Sydes
has moved to dismiss these claims for "wrongful dissipation of the
estate and failure to notice" (claim #4) and moved for sanctions
against plaintiffs.  For the following reasons, Sydes's motion to
dismiss is GRANTED and her motion for sanctions is DENIED.

A

Sydes, like Foote, moves to dismiss plaintiffs' claims
for insufficient service of process under FRCP 12(b)(5).  Doc #7 at
8:15-26.  The court, however, finds that a crucial distinction from
Foote's situation causes her argument to fail.  Because plaintiffs
served Sydes in accordance with California law, service of process
was proper pursuant to FRCP 4(e)(1) which provides that service is
effective if made "pursuant to the law of the state in which the
district court is located * * *."

Under California law, a plaintiff may be served by
leaving a copy of the summons and complaint at the individual's
place of business and thereafter mailing those documents to the
business and addressing them to the person to be served.  Cal Civ

17

United States District Court

For the Northern District of California

Proc Code § 415.20.  Plaintiffs' proof of service for Sydes, unlike that for Foote, indicates that not only did the process server leave a copy of the summons and complaint at her place of business, but it also indicates that she "thereafter mailed * * * copies" to Sydes.  Doc #25, Ex F.  This is consistent with California law.

Accordingly, Sydes's motion to dismiss based on insufficient service of process is DENIED and the court proceeds to the merits of her motion.

**B**

Plaintiffs' claim for "wrongful dissipation of the estate" must be dismissed for reasons similar to those underlying the dismissal of the claims against Sokotowski and Bishop.

The conservators, as a matter of state law, were required to file a petition with the superior court in order to sell assets of Rose's estate and they complied with that statute.  See Cal Probate Code § 1300(a); Doc #8 (Decl of Connolly), Ex E. Plaintiffs, prior to the court order, filed two documents with the court:  one styled "Petition to Halt Sale and Contest Sale and Strike Off Any Order to Sell Property" and one styled "Objections to County Petition to Sell Property and Furniture Located in Mrs[] Rose's Home."  See Doc #14, Exs JJ, NN.  In these documents, plaintiffs alleged an ownership interest in the property being sold.  The court, over plaintiffs' objections, ordered the assets of the estate sold.  Doc #14, Ex F.  Plaintiffs have not pursued an appeal from that superior court order.

The superior court, in issuing its order, necessarily found that plaintiffs had no legal interest in the property it

18

1   ordered sold.  Possession, or an immediate right to possess the

2   property sold, would be necessary for plaintiffs to support any

3   claim for conversion.  See Neil M Levy, 3-40 California Torts §

4   40.42 (Matthew Bender 2006).  Accordingly, allowing plaintiffs to

5   proceed with their claim against Sydes would require the court to

6   violate the preclusive effect of § 2103, as discussed in Sokotowski

7   and Bishop's motion to dismiss.

8         Furthermore, given that the superior court proceedings

9   preclude plaintiffs from suing the conservators who authorized the

10  sale in the first place, it obviously follows that they cannot

11  maintain a claim against the auctioneer acting at the express

12  direction of those conservators and in compliance with a court

13  order authorizing the sale of that property.  Bernard Witkin, 5

14  Summary of California Law, § 126 (10th Ed 2006) ("consent is a

15  complete defense to tort liability").  Accordingly, plaintiffs'

16  claim for "wrongful dissipation of the estate" is DISMISSED without

17  leave to amend.

18

19                              C

20        Additionally, plaintiffs claim that Sydes, by failing to

21  place her bond number on the advertisement for the auction of

22  Rose's estate, failed to give proper notice of the sale as required

23  by California Civil Code § 1812.607(a).  Doc #25 at 5:10.  Even

24  accepting that allegation as true, plaintiffs have directed the

25  court to no cognizable legal theory making the omission of a bond

26  number from an auction advertisement the foundation of a claim for

27  conversion or the like.

28  //

**United States District Court**

For the Northern District of California

While it is true that under California Civil Code § 1812.603 any person may petition a superior court to enforce the provisions governing auctioneers, the statute under which plaintiffs complain, § 1812.607(a), states that the maximum fine to be paid in the event an auctioneer fails properly to advertise a sale is $100.  Given that this regulatory issue is wholly unrelated to the remaining two causes of action in this case, and that the maximum recovery falls far below the $75,000 minimum required by 28 USC § 1332, the claim must be dismissed for lack of subject matter jurisdiction.

For the above-stated reasons, Sydes's motion to dismiss plaintiffs' claim for "wrongful dissipation of the estate and failure to notice" (claim #4) is DISMISSED without leave to amend.

D

Sydes has also moved for sanctions against plaintiffs arguing that their claim is legally baseless because plaintiffs are pursuing these claims on behalf of Rose's estate and prior court orders have made it clear that they do not have standing to do so. Doc #20 3:13-28, 4:17-28.  Sydes's arguments are misplaced. Plaintiffs are not attempting, as they did in Sutton v Llewellyn, to sue on behalf of Rose's estate.  Rather, they are asserting standing based on their status as successors-in-interest to her estate, standing conferred upon plaintiffs by Cal Code Civ Proc § 377.30.  Accordingly, although the court has dismissed plaintiffs' claims against Sydes, it declines to order sanctions against plaintiffs.

//

1

VI

2          The only causes of action that remain in this lawsuit are

3    those for wrongful death (claim #1) and elder abuse (claim #2) and

4    the only remaining defendants are Holz and Victorian.

5          John Sutton is no longer a plaintiff in this action as he

6    has been dismissed from the remaining claims for wrongful death and

7    elder abuse.  Danielle Sutton remains only as a plaintiff to the

8    second cause of action for elder abuse.

9          The case management conference now scheduled for April 17

10   at 9:00 am will take place as scheduled.  Plaintiffs' request to

11   appear by telephone is GRANTED.  Dismissed parties are excused from

12   attending the conference.

13

14         IT IS SO ORDERED.

15

16

17   _____
     VAUGHN R WALKER
18   United States District Chief Judge

19

20

21

22

23

24

25

26

27

28